412        DRUMMOND TOBACCO CO. *v.* RANDLE *et al.*

## THE DRUMMOND TOBACCO COMPANY

*v.*

## CHARLES H. RANDLE *et al.*

*Filed at Mt. Vernon September 25, 1885.*

1. CORPORATION—*two corporations using the same or similar names in the same business—right of prior organization to prevent the same.* A bill by a domestic corporation incorporated by the name of "Drummond Tobacco Company," to enjoin the incorporation of another company in the same city by the name of "Drummond-Randle Tobacco Company," to engage in the same business, will not be sustained unless it is shown, by such a preponderance of evidence as to satisfy the mind of the chancellor, that the incorporation of the second company under the name proposed will injure the former company in its business.

2. So the use of any particular name by a corporation will not be enjoined unless it is made to appear, from the evidence and by all the circumstances, the proposed use of the name will likely result in injury to the complainant.

3. If the persons composing a corporation formed under the laws of this State should become also incorporated under the laws of another State, the two organizations will constitute separate and distinct corporate bodies, and the one can not form an integral part of the other; and the corporation of this State can not enjoin the formation of a new corporation in this State under a similar name, to prevent an injury to the business of buying and selling of the foreign corporation in this State.

4. If a domestic corporation, after its members have procured an incorporation of themselves in a sister State, by the same name, should abandon the business, practically, in this State, and keep its organization only in name, to prevent others from transacting the same business, it can not, in equity, maintain a bill to enjoin the formation of another corporation in this State by a similar name, to engage in the same business, when none of its trade-marks are sought or intended to be used by the latter.

5. AMENDMENT—*of the record during term.* The circuit court has the power, at any time during the term, to allow an amendment of its record, so that it may conform to the facts. In this case the record was amended so as to show that suggestions of damages were filed upon the dissolution of an injunction, before the question had passed from the control of the court, and it was *held,* that the court during the term had power to allow the amendment.

6. APPEAL—*whether a franchise is involved.* Where a bill seeks to enjoin the incorporation of a company by a given name, adopted in the preparatory steps and proceedings, an appeal lies directly from a decree of the circuit court dismissing the bill, to this court, as a franchise is involved.

Appeal from the Circuit Court of Madison county; the Hon. William H. Snyder, Judge, presiding.

This is a bill in equity, by the Drummond Tobacco Company, against Charles H. Randle, John N. Drummond, John E. Hayner, George B. O'Kell, and John J. Mitchell. After the caption and address the bill proceeds as follows:

"That in the month of June, A. D. 1876, your orator became lawfully incorporated as a body corporate, under the general laws of the State of Illinois, by and under the name of 'Dausman & Drummond Tobacco Company,' with its chief office and place of business, under its articles, at the city of Alton, in said State. Your orator further avers that it commenced and carried on the business contemplated by its certificate of incorporation,—that is, the manufacture and sale of plug chewing tobacco at Alton, aforesaid,—and continued to so carry on and conduct said business under the name of Dausman & Drummond Tobacco Company, until the 20th day of August, 1879. Your orator further avers that on, to-wit, said 20th day of August, 1879, your orator's name was lawfully changed, under the general laws of Illinois, to the name of 'Drummond Tobacco Company,' by which name your orator has ever since been known and called; and ever since said date last aforesaid your orator has continued to conduct its lawful business of manufacturing and selling plug chewing tobacco at Alton, aforesaid, under its said corporate name of Drummond Tobacco Company, and still continues to so conduct and carry on its said business at the place last aforesaid. Your orator further avers that it has fully and in every respect complied with the laws of Illinois, and is now a lawful corporation of said State, having its principal office and place of business at the city of Alton, aforesaid. Your orator further avers, that your orator, by the expenditure of much time and labor and large sums of money, has widely circulated in its trade and business its said corporate name of Drummond

Tobacco Company, and has, by the use of your orator's said corporate name, printed and impressed upon labels, tags, and by other devices and designs, made known, generally, and distinguished and designated tobaccos of your orator's manufacture, so that 'Drummond tobacco,' and 'Drummond's goods,' and 'Drummond's brands,' have come into general use, and become well and favorably known throughout the United States, and thereby rendered the property in your orator's said corporate name, and the good will and trademark thereof, of great and permanent value to your orator; and your orator has acquired a proprietary right in and to its said corporate name, so that respondents neither lawfully have, nor can the proposed corporation hereafter mentioned have, a right to use your orator's said corporate name, nor any similitude thereof. Your orator further avers that under its said corporate name, and by virtue of the property in and good will thereof, your orator has established a very large and lucrative business in this and other States. Your orator further avers that said respondents, John N. Drummond, Charles H. Randle and John E. Hayner, were lately stockholders in your orator, from and after August 20, 1879, and the said Randle and Drummond were officers of your orator, the said Drummond having been the president, and the said Randle, the secretary, of your orator, whereby they acquired a knowledge of the business of your orator, and a knowledge of the names of your orator's customers, their places of residence and their commercial standing and credit, and otherwise had and obtained knowledge of your orator's business and affairs which otherwise they would not have obtained. Your orator further avers that said Randle, Drummond and Hayner, together with the other respondents, and in concert with them, concerted and conceived a scheme to form another and rival corporation, and to that end, and in view thereof, sold their stock in your orator, and resigned their respective trusts as officers of your orator, and immediately thereafter

commenced the consummation of their said scheme to form and incorporate such rival corporation, and that said proposed corporation shall also have its chief office and place of business, under its articles, at the same place at which your orator is, by its articles, located and domiciled. And your orator avers that it is the intention of the said defendants, if successful in organizing such corporation under the name of 'Drummond-Randle Tobacco Company,' to carry on the same business as that of your orator, and in the same markets. Your orator further avers that your orator is informed and believes, and charges the fact to be, that in order to carry out said scheme said respondents have made the statement required by law, and have filed the same in the office of the Secretary of State of Illinois, setting forth that the name of the proposed rival corporation shall be 'Drummond-Randle Tobacco Company,' and that it is to be created and organized a corporation for the purpose of manufacturing plug chewing tobacco, at Alton, aforesaid. Your orator further avers that said Secretary of State has already issued a license to said respondents, as commissioners, to open books for subscription to the capital stock of said proposed corporation, by and under the provisions of sections 2 and 3, of chapter 32, of the Revised Statutes of Illinois, which books are to be opened and subscriptions made under the proposed corporate name of 'Drummond-Randle Tobacco Company,' but that said commissioners have not, as yet, made or filed their report of their proceedings and doings under said license, but are actively preparing so to do; nor has said Secretary of State yet issued his certificate of the complete organization of said proposed corporation, nor has said proposed corporation become yet fully organized, but your orator has been informed and believes, and charges the fact to be, that said commissioners are actively engaged in preparing their report and preparing their other duties provided by the statute, and give out that they will file in the office of said Secretary of State their

doings as said commissioners at once, and that they and the other respondents, as soon as said report shall be filed, intend to demand of said Secretary of State that he issue to them and their successors a certificate of the complete organization of said proposed corporation, by and under the said corporate name of Drummond-Randle Tobacco Company, and that your orator is informed and believes, and charges the fact to be, that said respondents will carry into effect their said scheme and purpose to cause the complete organization of the said proposed corporation under said last named corporate name, and will do so immediately unless restrained from so doing by the order of this honorable court. Your orator further avers that should said respondents succeed in effecting their purpose to organize the said proposed corporation by the name of 'Drummond-Randle Tobacco Company,' and commence the manufacture and sale of plug chewing tobacco by and under said proposed corporate name, (as said respondents threaten and give out that they intend to do,) the public at large will be deceived as to the true source and origin of goods of their manufacture, and mistake such tobaccos so manufactured by said proposed corporation, as the goods manufactured and sold by your orator, as aforesaid; and the said proposed corporate name of Drummond-Randle Tobacco Company is so similar to that of your orator, that the proposed corporation will be mistaken for and confounded with your orator, and that if the purpose to form said proposed corporation shall be effected by said respondents, confusion and uncertainty concerning the corporate name of your orator will occur, whereby the identity of your orator's goods and business will be injuriously affected, and by confusing your orator's identity, goods and business with that of said proposed corporation, the business and good will and property of your orator's corporate name will be greatly injured, and your orator suffer irreparable loss and damages. Your orator further avers that confusion in the correspondence of your orator and said pro-

posed corporation has already arisen, your orator having received letters addressed to and intended for said proposed corporation, and your orator states that correspondence may have béen delivered to said respondents, by their proposed corporate name, addressed to and intended for your orator, and your orator avers that great confusion will hereafter ensue in the correspondence of your orator and said proposed corporation if it is permitted to be organized under its said proposed corporate name. Your orator further avers that if said proposed corporation shall be fully organized and do the business contemplated by it, as aforesaid, under the said proposed corporate name, dealers in the market will be confused, and led into the false belief that the two corporations are the same, and that great injury will result to the public and your orator, and the property in your orator's said corporate name, and especially the use of the word 'Drummond,' as connected with and as a part of its said corporate name, will thereby be infringed upon, and the good will and trademark thereof and property therein will be supplanted and destroyed, and the valuable business and trade which your orator has established by the expenditure of large sums of money and at a great cost of labor, under its said corporate name, and especially the use of the word 'Drummond' as a part of its said corporate name, and the good will and trademark thereof, attached to the goods of your orator, as aforesaid, will be wholly lost or greatly impaired. Your orator further avers that it has no adequate remedy at law in the premises, and that unless relief is here granted, your orator will be irreparably injured."

The prayer of the bill is, that defendants answer, their oaths thereto being waived, and "that a preliminary injunction may issue, restraining said respondents, their agents, servants and employes, from further proceeding with the organization of said proposed corporation under the said name of 'Drummond-Randle Tobacco Company,' and that they be further

27—114 ILL.

restrained from filing or causing to be filed with said Secretary of State said commissioners' report of the doings of said commissioners under said license to form a corporation under the corporate name aforesaid, and further restrained from applying to said Secretary of State for a final certificate of complete organization of said proposed corporation under the corporate name of 'Drummond-Randle Tobacco Company,' and that on a final hearing, said injunction be made perpetual," and concludes with a prayer for general relief. A temporary injunction was granted, and afterwards, on the 16th of March, 1885, the defendants answered (omitting the introduction) as follows:

"*First*—That they admit that in the month of June, 1876, there was a corporation formed and organized under the laws of the State of Illinois, under and by the name of 'Dausman & Drummond Tobacco Company,' with its office and place of business at the city of Alton, in the State of Illinois.

"*Third*—And these defendants further answering, admit that the name of the said corporation was, on the 20th day of August, 1879, lawfully changed to the name of 'Drummond Tobacco Company,' by which name the said complainant has ever since been known and called, and has continued to carry on its business of manufacturing and selling plug chewing tobacco, under the corporate name of 'Drummond Tobacco Company,' at Alton, aforesaid, except as hereinafter stated.

"*Fourth*—And these defendants further answering, say that they admit that the said complainant has fully complied with the laws of the State of Illinois, and they do not deny but that the said corporation is a lawful corporation of the State of Illinois, but they do expressly deny that its principal office and place of business is at the city of Alton, aforesaid, except as hereinafter stated; and these defendants will hereafter set forth and state the actual facts of the case upon the point of the location of the principal office and place of business of the said complainant.

"*Fifth*—And these defendants further answering, admit that the complainant, by the expenditure of much time, labor and large sums of money, has widely circulated in its trade its said corporate name of 'Drummond Tobacco Company,' and that by the use of its corporate name printed and impressed upon labels, and other devices and designs, made known and generally distinguished and designated the tobacco manufactured by the complainant, and they can not deny but that 'Drummond tobacco,' and 'Drummond goods,' and 'Drummond brands,' may have, to some extent, come into use, and become well and favorably known, and thereby become the property of the complainant; but these defendants deny that the credit or market value of the goods manufactured by the complainant are to any considerable extent enhanced by the use of the name of the said complainant, but on the contrary, these defendants aver that the credit and value of said goods manufactured and sold by the said complainant are affected and controlled by other matters which will hereafter be stated.

"*Sixth*—And these defendants further answering, say they admit that the said complainant has, acting under its corporate name, established a large and valuable business in this and other States.

"*Seventh*—And these defendants further answering, admit that these defendants, John N. Drummond, Charles H. Randle and John E. Hayner, were lately stockholders in the complainant corporation, and that these defendants, Drummond and Randle, were the president and secretary thereof; and they further admit that while such president and secretary, they acquired some knowledge of the business of the complainant, and of the names and places of residence and commercial standing and credit of its customers, and otherwise obtained some knowledge of the complainant's business and affairs which they would not otherwise have obtained; but these defendants aver and expressly charge that the com-

plainant had not any peculiar business secrets, or processes of manufacture, or methods of trade or business, within the knowledge of these defendants, and they deny that the said complainant has any right to complain that these defendants propose to use their experience in business and knowledge acquired by them, in the promotion of their own affairs and business.

"*Eighth*—And these defendants further answering, say that it is true, as charged in said complainant's bill, that they intend to form a corporation to engage in the manufacture and sale of plug chewing tobacco, with its principal office and place of business in the city of Alton; that it is true the said defendants, John N. Drummond, Charles H. Randle and John E. Hayner, were stockholders in the complainant, and that by the sale of their stock the said John N. Drummond and Charles H. Randle vacated their offices of president and secretary, but they charge the truth to be that they sold their said stock to, and with the express assent of, James T. Drummond, the principal stockholder in the complainant company, and with the consent of said company, as far as they know and believe; and they have never, either in the sale of their said stock or otherwise, either expressly or impliedly promised or agreed with the said stockholders in the said complainant corporation, or otherwise, that they would not organize a corporation or otherwise carry on the business of manufacturing plug chewing tobacco; and they expressly charge and insist that the said corporation which they propose and intend to organize, is in no sense the rival of the complainant, except that it proposes and intends to carry on the business of manufacturing plug chewing tobacco; and they expressly deny that they intend to organize a corporation of or with the name of the complainant; they expressly deny that they intend or have threatened to use the name of the complainant, or any sign, mark or device used by the said complainant in its business; on the contrary, they expressly charge that they

propose and intend, in the prosecution of the business of the corporation which they expect to organize, to use such marks, brands and trade-marks upon the goods, bill and note-heads, as will distinguish their products and manufactures, and their correspondence, not only from the products, manufactures and correspondence of the complainant, but from the products, manufactures and correspondence of all other companies and persons. And these defendants expressly deny all concert, false intent or desire to interfere with, or appropriate to themselves or the corporation, the business or affairs of the complainant, otherwise than as they may lawfully do by fair competition in the markets. They deny that they were influenced, in the selection of the name of their said corporation, by any purpose or intent to interfere with the business of the complainant, or to produce confusion in its business or correspondence, but in the selection of the name for their proposed corporation they were influenced alone by the fact that it was expected by these defendants that their associates, John N. Drummond and Charles H. Randle, were large stockholders, or would be so, in the proposed corporation, and active managers of its business, and that the name was, or would be, otherwise suitable and appropriate, and could not be mistaken for the name of any other company or corporation.

"*Ninth*—And these defendants further answering, say that they admit that they have taken the preliminary steps to the organization of a corporation, under the laws of the State of Illinois, by the name of 'Drummond-Randle Tobacco Company,' to carry on the business of the manufacture and sale of plug chewing tobacco in all accessible and profitable markets, and that its principal office and place of business will be at the city of Alton, in the State of Illinois; and that before this time they believe their organization would have been completed if it had not been prevented by the injunction issued herein.

"*Tenth*—These defendants further answering, deny that the name they propose for their said corporation is so similar or like that of the complainant as to produce or occasion any doubt or confusion in the trade or with the customers of either. They deny that the name, 'Drummond-Randle Tobacco Company,' can be mistaken for that of 'Drummond Tobacco Company,' by the trade or by any person interested in either, or who may have business with either of said companies, or who will deal or trade with either, or in the products of either company, or that the goods manufactured by either corporation will be confounded with or mistaken in the trade, or by dealers or customers, for the goods manufactured by the other.

"*Eleventh*—And these defendants further answering, say that in addition to the sufficient difference in the name of the complainant and the corporation they propose to organize, they expressly charge the truth to be, that in the tobacco trade the name of the manufacturers of plug tobacco is of small importance to the trade in determining the qualities of plug chewing tobacco or its popularity on the market, but it is the custom of all manufacturers of plug chewing tobacco to adopt and fix to their products certain peculiar names, marks and brands, by which such products are known to the trade and on the markets; and these defendants charge the truth to be that most of the plug chewing tobacco manufactured by the complainant is known on the market by names, brands, marks and devices of which the name of the complainant forms no part; and these defendants expressly aver that they do not intend that the corporation they propose to form shall use any name, brand or device employed by the complainant, or any resemblance or similitude thereof.

"*Twelfth*—And these defendants further answering, say that they deny that any confusion in the correspondence of the complainant and of these defendants, or any of them, or the corporation they propose to organize by the name of 'Drum-

mond-Randle Tobacco Company,' has occurred or happened on account of any real or supposed similarity of their respective names, and they deny that dealers in the market will, in any way, be confused or misled in the false belief that the two corporations are the same. And these defendants further answering, say that the said complainant has, in effect, abandoned the city of Alton, as its place of business and its principal office is no longer there, and it now carries on a nominal business there; that the fact is, that in the month of November, 1884, the said complainant sold its business establishment in the city of Alton, with all its machinery and business fixtures, to one Horatio N. May, of Chicago, Illinois, and finally, early in the month of January, 1885, the remaining stockholders in the complainant, after the withdrawal of the defendants Drummond, Randle and Hayner therefrom, with other persons unknown to these defendants, organized a corporation under the laws of the State of Missouri, with its principal office and place of business in the city of St. Louis, by the name of 'Drummond Tobacco Company;' and these defendants are informed and believe, and therefore charge it to be true, that the said complainant has sold and transferred to the Missouri corporation of the same name, all its property, with some trifling exceptions,—which last named property is only retained in order to preserve the existence of the complainant as an Illinois corporation, and to embarrass and hinder these defendants from engaging in the business of manufacturing plug chewing tobacco, by the name of 'Drummond-Randle Tobacco Company' or otherwise, while, in fact, for all business purposes the complainant has practically ceased to exist in Illinois."

Replication was filed, and, by agreement, certain affidavits taken and read on a motion to dissolve the injunction, were read and considered, together with certain oral evidence, as the evidence in the case. The court decreed that the bill be dismissed.

Messrs. G. & G. A. Koerner, and Messrs. Smith & Harrison, for the appellant;

The name of a corporation is a part of its franchise, and the courts will protect it in the exclusive use of such name. 1 Blackstone's Com. 475; Boone on Corp. sec. 32; High on Injunctions, sec. 687; Taylor on Corp. sec. 158.

The use of the name of a corporation is analogous to, if not stronger than, piracy upon an established trade-mark. *Newby* v. *Railroad Co.* Deady, 609; 8 Paige, 75; 11 id. 292; 2 Barb. Ch. 102; Willard's Eq. 402.

As to enjoining use of similar names, see *Holmes, Booth & Hayden* v. *Manufacturing Co.* 37 Conn. 278; *Ex parte Walker*, 1 Tenn. Ch. 97; Cox on Trade-marks, 475; *Sykes* v. *Sykes*, 3 B. & C. 541; *Croft* v. *Day*, 7 Beav. 84; *Life Ins. Co.* v. *Insurance Co.* 50 L. J. 253.

The statute (Rev. Stat. chap. 32, sec. 2,) provides that no license shall be issued for the formation of two companies having the same name. This means they shall not be substantially the same. See, also, section 5, chapter 32, of the Revised Statutes. Reference is also made to *Manufacturing Co.* v. *Hall*, 61 N. Y. 226; *Bradbury* v. *Dickens*, 27 Beav. 53; *Woodward* v. *Logan*, 21 Cal. 448; *Hazard* v. *Caswell*, 57 How. Pr. 1; *Christy* v. *Murphy*, 12 id. 77; *Howe* v. *Machine Co.* 50 Barb. 236; *Hogg* v. *Kirby*, 8 Ves. 215; *Singer Manf. Co.* v. *Wilson*, 47 L. J. 481; *Taylor* v. *Taylor*, 23 id. 255; *Williams* v. *Brooks*, 50 Conn. 278.

The franchise of a corporation is within the meaning of the term "franchise," as used in the constitution, and in the act providing for appeals to the Supreme Court. *Railroad Co.* v. *Dunbar*, 95 Ill. 577.

Mr. John G. Irwin, for the appellees:

The names of the two corporations are different, and no fraud is charged in the bill. The want of fraud is sufficient to defeat the bill, and besides, the injunction was premature.

The complainant had practically ceased doing business, and could not have been injured.

The right of an individual to use his own name is unlimited. A person of one name can not prevent another of the same name from using his name in business, although such use causes loss and injury; nor can a person obtain a trademark in a name as against another person of the same name. *Halloway* v. *Halloway,* 13 Beav. 209; *Burgess* v. *Burgess,* 22 L. J. 675; *Clark* v. *Clark,* 25 Barb. 75; *Comstock* v. *White,* 18 How. Pr. 421; *Burninger* v. *Wattles,* 28 id. 206; *Faber* v. *Faber,* 49 Barb. 357; *Stonebraker* v. *Stonebraker,* 33 Md. 352; *Taylor* v. *Taylor,* 22 L. J. 255; *Ainsworth* v. *Ainsworth,* 35 id. 352; *Meenely* v. *Meenely,* 62 N. Y. 427; *Decker* v. *Decker,* 52 How. 218; *Carmichael* v. *Carmichael,* 11 R. I. 395; *Gilman* v. *Hunnewell,* 122 Mass. 139; *McLean* v. *Fleming,* 96 U. S. 245.

Messrs. PALMERS, ROBINSON & SHUTT, also for the appellees:

That no franchise is involved, see *Board of Trade* v. *People,* 91 Ill. 80; *Hesing* v. *Attorney General,* 104 id. 292.

Counsel also discussed the facts and other points.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

It was incumbent on the complainant below (appellant here) to show, by such a preponderance of evidence as would reasonably satisfy the mind of the chancellor, that the incorporation of the Drummond-Randle Tobacco Company would so injure it as to justify the issuing of a writ of injunction. The injury must be of a substantial character, and not merely fanciful or conjectural. The complainant is a domestic corporation, and as such seeks relief. Obviously, under this bill a foreign corporation, although of the same name, composed of the same stockholders and having precisely the same shares of stock, would not be entitled to relief, for it would still be

another and entirely distinct and different corporation, exist-
ing under different laws, and if entitled to protection here, so
entitled under different principles of law.   It is not pretended
that the mere process of manufacturing tobacco is in anywise
affected by the name of the corporation.   It is the business
of buying, selling, exchanging, etc., only, that is claimed to
be thus affected.

The defendants make the following among other allegations
in their answer:   "That the said complainant has, in effect,
abandoned the city of Alton, as its place of business and its
principal office is no longer there, and it now carries on a
nominal business there; that the fact is, that in the month
of November, 1884, the said complainant sold its business
establishment in the city of Alton, with all its machinery and
business fixtures, to one Horatio N. May, of Chicago, Illinois,
and finally, early in the month of January, 1885, the remain-
ing stockholders in the complainant, after the withdrawal of
the defendants Drummond, Randle and Hayner therefrom,
with other persons unknown to these defendants, organized a
corporation under the laws of the State of Missouri, with its
principal office and place of business in the city of St. Louis,
by the name of 'Drummond Tobacco Company;' and these
defendants are informed and believe, and therefore charge it
to be true, that the said complainant has sold and transferred
to the Missouri corporation of the same name, all its prop-
erty, with some trifling exceptions,—which last named prop-
erty is only retained in order to preserve the existence of
the complainant as an Illinois corporation, and to hinder,
these defendants from engaging in the business of manufac-
turing plug chewing tobacco, by the name of 'Drummond-
Randle Tobacco Company' or otherwise, while, in fact, for
all business purposes the complainant has practically ceased
to exist in Illinois."   The evidence preserved in the record,
which consists in part of affidavits read upon the hearing
by agreement of counsel, sustains at least so much of this

allegation as relates to the entire business of buying, selling, trading, etc.

James T. Drummond, the principal stockholder in the complainant, in his affidavit admits the incorporation of the Drummond Tobacco Company, with its principal office or place of business in the city of St. Louis, under the laws of the State of Missouri, but seems to regard this as being in some way but a continuance of the Drummond Tobacco Company incorporated under the laws of this State, with its principal office or place of business in the city of Alton. He says: "Complainant has recently formally incorporated in the State of Missouri, under its own corporate name of 'Drummond Tobacco Company,' but not for the purpose of abandoning Alton as a manufacturing point by complainant, but for the purpose of convenience," etc. A corporation created under the laws of one State, may, by virtue of inter-State comity, be permitted to do business as a corporation in another State; but the elements which are essential to a corporation are such that it is impossible that a corporation created under the laws of one State can be incorporated into another corporation created under the laws of another State, as an integral part thereof, as is here alleged. What was really meant is manifest by another portion of the affidavit, where he says, "that said Missouri corporation really forms part and parcel of complainant, was organized by the same persons, with one exception, and the two corporations expect to work together in unison, as practically one and the same body, hereafter as heretofore known as 'Drummond Tobacco Company,' dealing in the same markets and with the same customers, and in the same class of goods." Fairly paraphrased, all the stockholders of the complainant but one, to facilitate the business of the complainant organized as a corporation, with the same name, and to carry on the same business, at St. Louis, under the laws of the State of Missouri,—making, in fact and in law, two entirely distinct and independent cor-

porations. The only unity is in the ownership of the stock. But this is of no consequence, because there is nothing in the law to. prevent adverse ownership in this respect hereafter, and the moment the stock of the two corporations shall pass into different hands, the corporations will become independent, in fact as well as in legal contemplation. Beyond all question they may now lawfully contract with each other. They may acquire rights and transact business inimical to each other, and they may sue each other, and make defence thereto, just as different natural individuals may do.

The only real controversy in the case is, whether the business of buying and selling and exchanging with the public, in general, has been abandoned by the complainant since the creation of the Missouri corporation. James T. Drummond, in his affidavit, denies that such is the fact, though more stress is laid therein on the abandonment of Alton as a place of manufacture than we think is important, since if we shall concede that Alton is not abandoned as a place of manufacture, yet if all the buying and selling and trading done by the complainant is by, to and with the Missouri corporation of the same name, no injury is shown likely to result to the complainant by the incorporation of the defendant, for it is not claimed or pretended that the creation of that corporation will mislead or confuse, or otherwise injure, the complainant in buying or selling or trading from, to or with the Missouri corporation. It is only the public at large—those who would not understand the difference between the names of the complainant and that of the Drummond-Randle Tobacco Company, or who would fail to keep in mind that difference— that it is alleged would be misled and injured thereby.

James T. Drummond is, to some extent, sustained by William Agne, book-keeper and cashier of the Drummond Tobacco Company, and by George T. Bailey, shipping clerk of that company, in his assertion that the business of the complainant in buying, selling, etc., has been carried on with

the public since the creation of the Missouri corporation the same that it was before; but he is directly contradicted by the affidavits of John N. Drummond, Charles H. Randle and John E. Hayner, who each and all swear therein: "That in the year 1880 the Drummond Tobacco Company started a manufactory in St. Louis, Mo., and the business there was called the St. Louis branch; that the object in starting the St. Louis factory was, that it was supposed that St. Louis possessed superior advantages for manufacturing tobacco, and selling it to those at Alton, Illinois, where, previous to that time, the manufacturing business of the company had been carried on; that it was also the intention to gradually cease doing business in Alton, Illinois, and transfer the entire business to St. Louis, Mo.; that the capacity of the factory in St. Louis, which was started in 1880, was about equal to the capacity of the factory at Alton, Illinois, and in carrying out the intention of ultimately transferring the entire business to St. Louis, the Drummond Tobacco company purchased the block of ground in St. Louis, Mo., bounded by Third, Fourth, Spruce and Almond streets, known as the Sisters' Hospital block, for which it paid $75,000, and erected on the said block a large stemery and warehouse for the storage of the raw material, which greatly increased the facilities for manufacturing and carrying on the business in St. Louis; that further carrying out the intention, a large building, which was intended to be used as a factory, was also erected on said block, said building, in connection with the said stemery and warehouse, when in running order as a factory, having a capacity to make from twelve to fifteen million pounds of plug chewing tobacco per year; that further carrying out said intention, the business done at Alton was gradually transferred to the St. Louis branch, so that in the year 1883 the factory at Alton, Illinois, was only run to about half its capacity, while the St. Louis factory was increased and run to its fullest capacity; that in the year 1884 the Alton factory only made

about two hundred and seventy-five thousand pounds, while the St. Louis factory made all the rest of the tobacco the company manufactured and sold that year, amounting to about six million pounds, and while the St. Louis branch and factory that year made large profits, the factory in Alton, Illinois, lost money to the company; that further carrying out said intention, James T. Drummond, the principal and largest stockholder in the company, and its general manager, removed his residence from Alton, Illinois, to St. Louis, Mo., and purchased a palatial home there, he doing so, so as to better enable him to manage and increase the business in St. Louis; that further carrying out said intention, James T. Drummond, as general manager of the said Drummond Tobacco Company, negotiated with Horatio N. May, of Chicago, Illinois, for the sale of the factory at Alton, Illinois, which belonged to the company there, and sold said factory and machinery to said May for $10,000, said factory and machinery having cost the company, first and last, about $40,000, and James T. Drummond's act was confirmed by the company, and a deed made by its officers to said May for said property, for the reason that it was considered that as the business was now in shape to and would soon be carried on in St. Louis, it was best to sell the Alton factory while an opportunity existed; that in January, 1885, the undersigned were offered by said James T. Drummond a price for their stock in the Drummond Tobacco Company, which they accepted; that they transferred their stock in said company to the said James T. Drummond; that at the time Charles H. Randle and John N. Drummond were directors of said company, and, with James T. Drummond, formed the board of directors of said company; that James T. Drummond then stated to them that he desired and intended to wind up the business of the company at once; that he would organize a corporation under the laws of Missouri, and the Drummond Tobacco Company of Alton, Illinois, would then transfer and sell out to the said Drummond

Tobacco Company of St. Louis, and the Drummond Tobacco Company of Alton, Illinois, would then dissolve by surrendering its organization or charter; that said James T. Drummond requested Charles H. Randle, as he was familiar with the business of said company, and being its secretary, to continue to act as secretary and director until the business of the said Drummond Tobacco Company of Alton, Illinois, was wound up, and the corporation dissolved; that said Charles H. Randle declined so to act; that said James T. Drummond then requested said Charles H. Randle and John N. Drummond not to both resign at once as directors of said Drummond Tobacco Company of Alton, Illinois, as it would leave him without a quorum in the board of directors, but for him (Charles H. Randle) to resign first, and he (James T. Drummond) would then transfer to Levi Davis, Jr., of Alton, Illinois, two shares of stock, so as to enable him to be a director, and also to act as secretary of the company until its dissolution; and then, when Levi Davis, Jr., had been elected a director in place of said Charles H. Randle, John N. Drummond could resign, and J. L. Curby, of St. Louis, Mo., would be elected in his (John N. Drummond's) place, as director, and thus he would have a board of directors to enable him (James T. Drummond) to make the necessary transfers to the Drummond Tobacco Company of St. Louis, Mo., as soon as incorporated, and to dissolve the corporation at Alton, Illinois; that to please said James T. Drummond, they (Charles H. Randle and John N. Drummond) did as he, the said James T. Drummond, desired in that respect, and that programme was carried out, and the board of directors of said company is now composed of James T. Drummond, Levi Davis, Jr., and J. L. Curby; that Levi Davis, Jr., owns two shares, or $200, J. L. Curby fifty shares, or $5000, and James T. Drummond nine hundred and forty-eight shares, or $94,800; that in accordance with that intention to close up the business of the Drummond Tobacco Company of Alton, Illinois, and to

incorporate another company of the same name in the city of St. Louis, State of Missouri, said James T. Drummond and others did organize, and have incorporated under the laws of the State of Missouri, the Drummond Tobacco Company of St. Louis; that after the incorporation of the Drummond Tobacco Company of St. Louis, Mo., the Drummond Tobacco Company of Alton, Illinois, bargained and sold to the Drummond Tobacco Company of St. Louis, Mo., all the property it then owned at St. Louis, Mo., including all its trade-marks, brands, devices, patents, and licenses under patents, retaining only *its* corporate name, two brands, and some manufactured tobacco at Alton, Illinois, which tobacco was not sold, because, if sold and removed, the government stamps would at once have to be placed on each box, while it could remain unstamped until sold; that the Drummond Tobacco Company of Alton, Illinois, to-day has no factory in Alton, Illinois, or elsewhere,—is a mere shadow, the substance having been transferred to the Drummond Tobacco Company of St. Louis, Mo.; that it never was the intention to have two Drummond Tobacco Companies, each having the same name, one in St. Louis, Mo., and one in Alton, Illinois, but it was the intention to have all that belonged to the Drummond Tobacco Company of Alton, Illinois, transferred to its namesake in St. Louis, Mo., and the only reason why, as affiants believe, the Drummond Tobacco Company of Alton, Illinois, is still kept alive, instead of being dissolved, as was intended and agreed, is for the purpose of annoying and vexing affiants, and for the purpose of trying, without reason or justice, by this vexatious proceeding to prevent, if possible, these affiants from completing the organization of the Drummond-Randle Tobacco Company, of which they are stockholders."

William Agne also made another affidavit at the instance of defendants. In the first he had stated that he believed the Drummond Tobacco Company would start another factory at

Alton. In his last affidavit he explains that that statement was made on the faith of what he had heard James T. Drummond say upon the subject after this suit was commenced. He then adds, "that the Drummond Tobacco Company has no machinery of any description to manufacture tobacco in Alton, Illinois; that the Drummond Tobacco Company, since the sale of its factory in Alton, Illinois, has kept no accounts on its books, here, with any customer except the Drummond Tobacco Company of St. Louis, Mo.; that the Drummond Tobacco Company of St. Louis, Mo., makes the sales of the remnant of the stock of tobacco now on hand, and the tobacco so sold is shipped or sent, when it has been ordered, by the Drummond Tobacco Company of St. Louis, Mo."

We can not say that the court below erred in holding that the evidence in favor of the complainant did not preponderate over that of the defendants upon this issue. No authority cited by the counsel for complainant holds, and we are aware of none not cited by them which holds, that the use of a name in a corporation will be enjoined unless it is made to appear, by all the circumstances, that the proposed use of the name will likely result in injury to the complainant. The postmaster at Alton is positive in his evidence that there is no reasonable liability of the mail matter of the complainant being delivered to the proposed corporation, the Drummond-Randle Tobacco Company, and the evidence fails to satisfy us, that in telegraphing, expressing and shipping by the Drummond Tobacco Company at St. Louis to and from the complainant at Alton, there is likely to be confusion and annoyance, leading to injurious results, because of the Drummond-Randle Tobacco Company doing business at Alton. All the evidence showing the probability of injury resulting from the use of the word "Drummond" in the name "Drummond-Randle Tobacco Company," is predicated upon the hypothesis that such name is to be used in the trade with the public, and that that company and the complainant will, in the future,

28—114 ILL.

be competitors before the same public for the same trade. But that hypothesis, we have seen, is effectually excluded by the affidavits of John N. Drummond, Randle, Hayner and Agne.

The objection to the assessment of damages is not tenable. The record was amended during the term, showing these damages to have been assessed at the proper time, and this amendment was within the power of the court. (*Frink et al.* v. *King*, 3 Scam. 144.) The amended record shows suggestions of damages filed before the question had passed beyond the control of the court, and the evidence authorized the amount decreed.

We perceive no ground upon which to reverse the decree below. We are of opinion that the appeal was properly prosecuted directly to this court. The creation of a corporation (and to be a corporation is itself a franchise) was sought to be enjoined. All the steps taken to form a corporation were to form one by the name of the "Drummond-Randle Tobacco Company." If a corporation could not be formed by that name, none could be formed under the steps then taken to form a corporation, there being no provision in the statute authorizing the Secretary of State to reject the proposed name and substitute another. A new corporation could, of course, be formed by the same parties, but this would involve an abandonment of the first essay in that direction, and the initiating of new proceedings.

The decree is affirmed.

*Decree affirmed.*